**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| ALEX ANDERSON, Individually as Parent &, Legal Guardian; TYDREAN A. ANDERSON, Individually and as incompetent person,<br><br>Plaintiffs,<br><br>vs.<br><br>DORCHESTER COUNTY; DORCHESTER COUNTY SHERRIFF'S OFFICE; OFFICER CALLIE PIRKEL, Individually and in her capacity of the Dorchester County Sherriff's Office; DORCHESTER SCHOOL DISTRICT II; DUBOSE MIDDLE SCHOOL; PRINCIPAL TED BRINKLEY, Individually and in his official capacity as Principal of Dubose Middle School,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:20-cv-2084-DCN-MGB<br><br>**ORDER** |

This matter comes before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 46, recommending that the court grant defendant Dubose Middle School's motion to dismiss, ECF No. 10, and defendant Ted Brinkley's ("Brinkley") motion to dismiss, ECF No. 12; and grant in part and deny in part defendant Dorchester School District II 's ("the District") motion to dismiss, ECF No. 11, and defendants Dorchester County, Dorchester County Sherriff's Office ("DCSO"), and Callie Pirkel's ("Pirkel") motion to dismiss, ECF No. 16. After Magistrate Judge Baker filed the R&R, the District filed a second motion to dismiss, ECF No. 60. For the reasons set forth below, the court adopts in part and rejects in part the R&R; grants Brinkley's motion to dismiss, ECF No. 12, and Dubose Middle School's motion to dismiss, ECF No. 10; and grants in part and denies in part the District's motion

1

to dismiss, ECF No. 11, and Dorchester County, DCSO, and Pirkel's motion to dismiss, ECF No. 16. Further, the court denies the District's second motion to dismiss, ECF No. 60.

## I.  BACKGROUND

This matter arises from the allegedly unlawful detention of plaintiff Tydrean A. Anderson ("Tydrean") while he was a student at Dubose Middle School. According to the complaint, on February 1, 2016, Tydrean "was accused of smoking pot on school premises," when a "resource officer falsely stated [that] he found pills in Tydrean's book bag[.]" ECF No. 1, Compl. ¶ 18. Plaintiffs allege that the resource officer placed Tydrean "in a room alone with [an] officer who had a gun, who then questioned Tydrean and forced him to write a statement falsely stating that he was smoking pot on school grounds and was in possession of pills, all without the knowledge of Tydrean's parents." Id. ¶ 19. Tydrean was charged with "Simple Possession" of marijuana and a Schedule II controlled substance and expelled from school. Id. ¶ 21. According to the complaint, however, the Dorchester County Solicitor's Office "dismissed the charges" and "refused to prosecute the case." Id. ¶ 22. The complaint states that this action is brought by Tydrean "individually" and "as an incompetent person," as well as by Alex Anderson ("Alex") (together with Tydrean, "plaintiffs"), "individually and as Parent & Legal Guardian of" Tydrean. Id. at 1. As a result of the alleged incident, plaintiffs allege that they have suffered "actual damages, including, but not limited to, deprivation of their liberty, injury to their reputation, public embarrassment and humiliation, loss of freedom, mental anguish, emotional distress and attorney fees and costs." Id. ¶ 23.

On June 2, 2020, plaintiffs filed suit in this court alleging seven causes of action: (1) "Deprivation of Constitutional Rights, Pursuant to 42 U.S.C. § 1983" against all defendants; (2) "False Arrest and Confinement—42 U.S.C. § 1983" against all defendants; (3) negligence against all defendants; (4) invasion of privacy against all defendants;[1] (5) "Grossly Negligent and Intentional Infliction of Emotional Distress/Outrage" against all defendants; (6) "Discrimination Against Person with Disability, Pursuant to 29 U.S.C. § 794" against the District, Dorchester County, and DCSO and (7) civil conspiracy against all defendants. Compl. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02 (D.S.C.), the court assigned the matter to Magistrate Judge Baker. On June 29, 2020, Dubose Middle School, the District, and Brinkley (the "District Defendants") filed respective motions to dismiss. ECF Nos. 10, 11, 12. On July 2, 2020, Dorchester County, DCSO, and Pirkel (the "County Defendants") also filed a motion to dismiss. ECF No. 16.

After the motions became ripe, Magistrate Judge Baker issued the R&R on September 11, 2020. ECF No. 46. On September 25, 2020, the County Defendants and the District Defendants filed objections to the R&R. ECF Nos. 49 and 50. On October 5, 2020, plaintiffs also filed objections to the R&R. ECF No. 52. On October 9 and October 16, 2020, plaintiffs responded to defendants' objections. ECF Nos. 53 and 56. On October 19, 2020, the County Defendants and the District Defendants filed respective responses to plaintiffs' objections, making the case ready for a ruling from this court.

---

[1] The court adopts the R&R's numbering of plaintiffs' causes of action. As the R&R explained, "The Complaint skips a Fourth Cause of action—it labels "Invasion of Privacy" as the "Fifth Cause of Action and continues on with that numbering." ECF No. 46 at 3. Plaintiffs did not object to the R&R's corrective renumbering.

ECF Nos. 58 and 59.  Thereafter, the District filed another motion to dismiss, ECF No. 60, which garnered a response, ECF No. 61, and a reply, ECF No. 62.  The court held a hearing on the motions on March 8, 2021.  As such, this matter is now ripe for the court's review.

## II.  STANDARD

### A.  R&R

The Magistrate Judge only makes a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270–71.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

In the motions to dismiss, defendants[2] make various, overlapping arguments for dismissal. The R&R recommends that the court grant in part and deny in part those motions.[3] All parties filed objections. The court addresses defendants' objections, turns to plaintiffs' objections, and then summarizes the effects of its findings.

---

[2] The court refers to all defendants collectively as "defendants."

[3] As an initial matter, the R&R recommended, based on the parties' stipulations, "that [ ] Dubose Middle School's Motion to Dismiss [ ] be granted and [that] Dubose Middle School be dismissed from this action." ECF No. 46 at 4. This recommendation did not elicit objection, meaning that the court reviews it only for clear error. Finding

## A. Defendants' Objections

### 1. Service

First, the court addresses the District's argument that the action must be dismissed for improper service under Fed. R. Civ. P. 4(e).  Specifically, the District argues that plaintiffs' "purported service is ineffective pursuant to Rule 4(j)(2)(A) [ ], as a copy of the Summons and Complaint were not delivered to the [District's] chief executive officer."  ECF No. 11 at 3.  The R&R agrees with the District's premise but rejects its conclusion:

> Based on the foregoing, it appears [the District] has not been properly served given the lack of service on [the District's CEO].  However, the "provisions of [Rule 4] should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits."  Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963).  Noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of the suit and have not been prejudiced by the technical defect in service.  Id. at 668-69. "[T]he real purpose of service of process is to give notice to the defendant[.]"  Scott v. Md. State Dep't of Labor, 673 Fed. App'x. 299, 304 (4th Cir. 2016).
>
> Here, the fact that [the District] is represented by counsel and moving to dismiss is common sense evidence that it has notice of the claims . . . .  And the Court cannot find that service on [the District] is "unlikely to be accomplished" based on the current record.  Accordingly, the undersigned recommends that dismissal not be granted on the basis of lack of proper service.  Instead, the Court should allow Plaintiffs additional time to effectuate proper service[.]

ECF No. 46 at 7–8.  The District objects to the recommendation, arguing again that plaintiffs' improper service warrants dismissal.  The court agrees with the R&R.

---

none, the court grants Dubose Middle School's motion to dismiss, ECF No. 10, and dismisses Dubose Middle School from this action.  Accordingly, the court's remaining references to "the District Defendants" refers to the District and Brinkley.

Fed. R. Civ. 12(b)(5) provides defendants a vehicle for challenging the sufficiency of a plaintiff's service of process. While the plaintiff bears the burden to show that he or she complied with the rules for service, Shlikas v. SLM Corp., 2011 WL 2118843, at *2 (D. Md. May 25, 2011), aff'd, 546 F. App'x 290 (4th Cir. 2013), where "the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction," Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Indeed, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Id.

While the District is correct that plaintiffs' attempted service was improper under Rule 4(j), that rule governs whether service was proper, not whether service is insufficient, such that dismissal is an available remedy. The sufficiency of service, i.e., whether a plaintiff has taken too long to properly effect service, is governed by Rule 4(m). That rule provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). In other words, Rule 4(m) provides the court with two avenues when a defendant is not served within 90 days of the plaintiff's filing of the complaint. Under the first, available without qualification, the court "must" either: (1) dismiss the action without prejudice, or (2) order that service be made within a specified time. Id.

Under the second avenue, "if the plaintiff shows good cause for the failure," the court "must extend the time for service." Id.[4]

The court dispenses with the good-cause inquiry because it finds that, even in the absence of good cause, justice weighs heavily against dismissal for two reasons. For one, the prevailing purpose of the service rules are to ensure that a defendant is notified that a lawsuit has been filed against him, such that the litigation does not commence without him, denying him due process under the law. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347 (1999). With this bedrock principle in mind, the Fourth Circuit has consistently held that a plaintiff's failure to strictly comply with Rule 4 does not warrant dismissal of the case where the defendant has actual notice of the lawsuit against it. Armco, 733 F.2d at 1089; Karlsson, 318 F.2d at 668. As discussed above, the District is abundantly aware of the lawsuit plaintiffs have filed against it. It has been active in the

---

[4] This court has enforced the Fourth Circuit's holding in Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995), which provides that a court must dismiss a case without prejudice when service is improper if no good cause is shown—a different interpretation of Rule 4(m) than the one the court embraces here. See Craig v. Glob. Sol. Biz LLC, 2020 WL 528015 (D.S.C. Feb. 3, 2020). There, the court noted that "several district courts in the Fourth Circuit have reasoned that Mendez is no longer good law, despite the fact that it has not been formally overruled, and permitted an extension of time for service absent a showing of good cause." Id. at *4. Indeed, several district courts have concluded that the 2015 Amendments to Rule 4(m), while not substantive, reflect the drafters' intent to Congressionally overrule Mendez, rendering it non-controlling. See Robinson v. G D C, Inc., 193 F. Supp. 3d 577, 581–84 (E.D. Va. 2016); see also Escalante v. Tobar Constr., Inc., 2019 WL 109369, at *2–4 (D. Md. Jan. 3, 2019).

This court distinguished Craig from the recent string of Mendez-disavowing district court cases because the defendant "ha[d] not appeared in this case and [wa]s facing default judgment, meaning the stakes associated with the improper service [we]re much higher." Craig, 2020 WL 528015 at *4. That is not the case here. Not only has the District entered an appearance in this case, but it has been an active participant in the litigation, and the court's failure to dismiss it from the case will not result in a default judgment against it. As such, the court here embraces the post-Mendez interpretation of Rule 4(m).

litigation every step of the way.  At this point, the District's complaint of being improperly served is little more than an exercise in semantics.  Surely, the spirit of the rules would not permit a plaintiff's prayer for relief to be divested on the back of a technical error in service when the prevailing purpose of service has clearly been accomplished.  See Fed. R. Civ. P. 1 ("[The Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

And secondly, the defect in service onto which the District hitches its argument is highly technical and does not warrant the District's dismissal years into this lawsuit.  As the R&R outlines, plaintiffs failed to comply with a South Carolina Rule of Civil Procedure that requires service by certified mail to be "restricted to the addressee."  S.C. R. Civ. P. 4(d)(1).  Plaintiffs did send the summons and complaint to the District by certified mail, and an agent of the District did receive it.  However, plaintiffs did not restrict the package to the addressee, the District's CEO.  Of course, the complaint was received by a District employee and there is no indication that plaintiffs' failure to restrict delivery to the addressee delayed the District's notice of the lawsuit.  As such, the cosmetic defect in service should not foreclose plaintiffs' ability to redress the rights the District allegedly violated.  See Armco, 733 F.2d at 1089 ("When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process.").  Therefore, the court adopts the recommendation of the R&R and rejects the District's improper-service argument.[5]

---

[5] It appears that plaintiffs have now properly served the District, see ECF No. 60 at 2, yet the District continues to argue for dismissal based on improper service.  The court finds this service to be "timely" under the above analysis and, to the extent it

### 2. Standing

The complaint states that Alex Anderson brings this action "individually, [a]nd as Parent & Legal Guardian of" Tydrean, and that Tydrean brings this action "individually" and as "an incompetent person."  Compl.  In their motions to dismiss, the District Defendants and the County Defendants argue that Alex lacks standing to bring claims in his individual capacity.  Plaintiffs concede as much, noting that "any causes of action assumed to be brought by [Alex] individually are conceded to be in error," and that they "agree[] that the caption should be corrected to reflect [Alex] as parent and legal guardian only as to Tydrean Anderson, as a minor/incompetent person."  ECF No. 30 at 12.  Untangling the mess, the R&R stated:

> Given the allegations in the Complaint and the apparent consensus that [Tydrean] is a minor and Alex is his parent, the undersigned recommends dismissal of this action is not appropriate based on a lack of standing. Rather, the record indicates Tydrean, a minor, is represented by his parent and general guardian, Alex, in accordance with Rule 17(c)(1) of the Federal Rules of Civil Procedure.  However, Plaintiffs still need to amend the Complaint to reflect that Alex brings this action only in a representative capacity on behalf of Tydrean as his parent and general guardian, and to clarify that Tydrean appears in this action as an incompetent person/minor.

ECF No. 46 at 9.

The District Defendants and the County Defendants object to this recommendation on distinct, albeit related, grounds.  The District Defendants argue that the R&R makes the proper findings but recommends the wrong conclusion.  They explain that neither Alex nor Tydrean has standing to pursue claims in his individual capacity,

---

otherwise complies with the civil rules, finds that it constitutes proper service.  To the extent that the service remains technically deficient for one reason or another, the court encourages the parties to resolve the issue of service amicably, understanding that nit-picky arguments devoid of substantive meaning win no favor with any court.

meaning that the only potentially viable claims are those brought by Alex in a representative capacity on behalf of Tydrean. And those claims must be dismissed, the District Defendants conclude, because Alex "has not been appointed as Guardian ad Litem for the purposes of pursuing claims on his son's behalf." ECF No. 49 at 2.

Before addressing the argument, the court sets the relevant facts straight. At the hearing, plaintiffs' counsel reported that Tydrean's date of birth is June 2, 2001, a point that defendants did not dispute. Plaintiffs filed this case on June 2, 2020, Tydrean's nineteenth birthday. As such, Tydrean was not a minor when this lawsuit was filed, meaning that Tyrean's minority cannot be a basis for Alex's representative standing. House v. Mitra QSR KNE LLC, 796 F. App'x 783, 787 (4th Cir. 2019) (The "requirement that a plaintiff have standing [ ] is measured at the time suit is filed, based on an analysis of the facts as they then exist.") (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Plaintiffs' counsel at the hearing explained that, despite the chaotic descriptions in the complaint's caption, this lawsuit was brought by Alex in his representative capacity on behalf of Tydrean as an incompetent person, not as a minor.[6] Plaintiffs' counsel also reported that, although Alex has not been formally appointed as Tydrean's guardian ad litem, appointment proceedings have been initiated in South Carolina state court and remain ongoing. Despite the absence of a formal appointment, the court finds that Alex has standing to sue on behalf of Tydrean as a "next friend."

---

[6] The County Defendants also contend that this action should be dismissed for lack of standing because Tydrean was an adult when this lawsuit was filed. Because plaintiffs' counsel has clarified that Alex brings this suit based on Tydrean's incompetence rather than his minority, the court overrules this objection.

Under Fed. R. Civ. P. 17(c)(2), a minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."[7]  The Fourth Circuit has stated that "no special appointment process for the next friend is required."  Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 285 (4th Cir. 1979).  "A next friend need not have any particular formal legal status; it is sufficient that the individual possess 'an interest in the welfare' of the person to whom they relate and whose rights are being pursued in the cause of action."  Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 398 (D.D.C. 2015) (quoting In re Air Crash Disaster Near Saigon, South Vietnam on April 4, 1975, 476 F. Supp. 521, 525 (D.D.C. 1979)).  Courts invoking the next friend doctrine generally ensure that three prerequisites are satisfied: the next friend must (1) provide an adequate explanation as to why the real party in interest cannot bring the suit himself, (2) be dedicated to represented party's best interests, and (3) have some significant relationship with the represented party.  T.W. v. Brophy, 954 F. Supp. 1306, 1309 (E.D. Wis. 1996), aff'd as modified sub nom. T.W. by Enk v. Brophy, 124 F.3d 893 (7th Cir. 1997) (citing Whitmore v. Arkansas, 495 U.S. 149, 163–64 (1990)).  Courts may imply the existence of a next friend relationship even where the party bringing suit has not explicitly alleged it.  Pollreis v. Marzolf, 446 F. Supp. 3d 444, 457

---

[7] The Erie line between state and federal law is a difficult one to ascertain here. 304 U.S. 64 (1938).  As Wright and Miller posit, "A close reading of Rule 17(c) discloses that although no reference is made to state law, the language is sufficiently permissive to accommodate the application of state law."  6A Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1571 (3d ed. 2020); see also Tarlton v. Town of Red Springs, 2017 WL 4782641, at *2 (E.D.N.C. Oct. 23, 2017) ("[T]he requirement . . . that the court apply the law of the individual's domicile has been held to apply to determinations under Rule 17(c).").  The court need not fully reckon with the dilemma of whether to apply state or federal law in this instance, since both authorize the court's finding that Alex can maintain this action as Tydrean's next friend.

(W.D. Ark. 2020) (implying a next friend relationship between parent and children where parent brought suit in her own name but "clear[ly]" asserted claims "in her representative capacity and as their mother and next friend.").[8]

The court resolves to imply a next friend relationship between Alex and Tydrean for two reasons. First, it is clear to the court that Alex's representation of Tydrean in this action fits the next friend mold. Without resolving the issue of Tydrean's competency, which is an issue better suited for state court, the court finds that Alex has presented an adequate explanation as to why Tydrean cannot bring the suit himself. Brophy, 954 F. Supp. at 1309. The evidence in the record corroborates plaintiffs' counsel's statements at the hearing that Tydrean has significant disabilities that drastically hinder his ability to adequately represent his own interests. Likewise, the court is satisfied that Alex, Tydrean's father, is dedicated to his son's best interests. And finally, Alex has a clear "significant relationship" with Tydrean as his father. Even though Alex has not moved for next friend appointment, a clear implicit next friend relationship exists here, such that the court may properly rely on it for standing purposes. See Pollreis, 446 F. Supp. 3d at 457.

Second, the next friend doctrine provides a just result. As the court mentioned above, Alex has initiated proceedings in state court to be appointed as Tydrean's guardian ad litem. It would be unjust for the court to dismiss this suit based on Alex's failure to obtain formal guardianship of Tydrean during the pendency of state court proceedings in

---

[8] South Carolina, too, recognizes the next friend doctrine. S.C.R.P. 17(c) states, "If a minor or incompetent person does not have a duly appointed representative he may sue by his next friend or by guardian ad litem." See, e.g., Patton v. Miller, 804 S.E.2d 252, 261 (2017).

which Alex aims to accomplish exactly that. At the same time, the court ought not to usurp the authority of the state court, which is the appropriate forum for adjudicating the issue of Tydrean's guardianship. The next friend doctrine offers a path by which the court can avoid both perils. In implying a next friend relationship, the court permits Alex to proceed in a representative capacity. At the same time, the court makes no formal determinations as to Tydrean's competency or Alex's ability to represent Tydrean's best interests, thereby respecting the role of state court as the proper adjudicator of issues of family law. Should the state court appoint Alex as Tydrean's guardian ad litem, he may proceed in this action as such. Until that time, Alex has next-friend standing to assert the instant claims. Thus, the court finds that Alex has standing to bring the instant claims as Tydrean's next friend, and defendants' objection to the contrary is overruled.

### 3. Statute of Limitations, or "What is A Year?"

Next, the District Defendants and the County Defendants argue that plaintiffs' claims are barred by the statute of limitations. The parties agree on the facts and the applicable statutes of limitations but reach different conclusions. As the R&R correctly outlines, the limitations period for plaintiffs' § 1983 claims is three years and the limitations period for their tort claims is two years. See ECF No. 46 at 10 (citing Owens v. Okure, 488 U.S. 235, 249–50 (1989) and S.C. Code Ann. § 15-78-110). Plaintiffs allege that the incident giving rise to their claims occurred on February 1, 2016. It is undisputed that Tydrean was a minor at that time. Plaintiffs filed this lawsuit on June 2, 2020, more than four years after the causes of action allegedly accrued. The R&R concluded that plaintiffs' claims are nevertheless timely because the applicable limitations periods are tolled by S.C. Code Ann. § 15-3-40, which provides:

> If a person entitled to bring an action . . . is at the time the cause of action accrued either: (1) within the age of eighteen years; or (2) insane;
>
> the time of the disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended:
>
> (a) more than five years by any such disability, except infancy; nor (b) in any case longer than one year after the disability ceases.

In other words, where a person entitled to bring an action is a minor, the limitations period applicable to his action is tolled until he reaches the age of eighteen but cannot be extended more than one year thereafter.

Defendants assert that the tolling provision only applies to claims brought directly by the person experiencing the minority or disability and not to claims brought by a parent or guardian of the allegedly injured person. Because Tydrean's claims are brought by Alex in a representative capacity, defendants conclude, the tolling statute does not apply, and the claims are untimely. Defendants cite to no authority for their contention, which is belied by the plain language of the statute and relevant case law. With respect to the former, the statute clearly applies where "a person entitled to bring an action," i.e., Tydrean, was a minor when the cause of action accrued. S.C. Code Ann. § 15-3-40. The statute applies to "the commencement of the action" generally and makes no distinction as to who must bring the action. Id. In other words, the statute tolls the limitations period where the injured person is a minor, regardless of who eventually brings the action on the minor's behalf. Indeed, South Carolina courts have repeatedly applied § 15-3-40 to causes of action brought by guardians on behalf of injured minors. See, e.g., O'Tuel v. Villani, 455 S.E.2d 698, 700 (S.C. Ct. App. 1995), overruled on other grounds by I'On, L.L.C. v. Town of Mt. Pleasant, 526 S.E.2d 716 (S.C. 2000) (finding that § 15-3-40

applied to a minor's claim when that claim was brought by the minor's guardian ad litem).  As such, the court overrules the defendants' first statute-of-limitations argument.

The District Defendants also assert, in the alternative, that even if the applicable statutes of limitations are tolled under § 15-3-40, plaintiffs' claims are nevertheless untimely because plaintiffs waited more than "one year" to bring them.  As the court indicated above, § 15-3-40 tolls the applicable tolling periods but does so for "no longer than one year after the [minority] ceases."  As such, plaintiffs had one year from Tydrean's eighteenth birthday to bring their claims.  Tydrean turned eighteen on June 2, 2019[9], and plaintiffs filed this action on June 2, 2020.  In arguing that plaintiffs missed the yearlong tolling period, the District Defendants argue that a year is not a year.  Quoting a publication called the "Bouvier Law Dictionary,"[10] the District Defendants claim, "A year from a given date is the number of days in that and the succeeding year required to reach the eve of the same date the following year according to this system.  A year and a day ends on the same date on which the period commences."  ECF No. 50 at 7. Therefore, the District Defendants conclude, plaintiffs' tolling period expired on June 1, 2020, meaning that their June 2, 2020 filing is untimely. The clear weight of relevant authority indicates otherwise.

Section 15-3-40 does not specify how the one-year tolling period should be computed.  Because South Carolina law is silent on the topic, the court turns to federal

---

[9] The District Defendants mistakenly claim in their papers that Tydrean's minority ended on June 1, 2019.  But, at the hearing, they failed to dispute plaintiffs' counsel's indication that Tydrean's eighteenth birthday was June 2, 2019.  As such, the court accepts plaintiffs' statement.

[10] The District Defendants' citation to this text is comprised merely of the words, "Bouvier Law Dictionary."  The court was unable to locate this obscure publication but assumes that that it exists someplace.

law for guidance. "The general rule for computing time limitations in federal courts is Federal Rule of Civil Procedure 6(a)." United States v. Hurst, 322 F.3d 1256, 1260–61 (10th Cir. 2003) (quoting Newell v. Hanks, 283 F.3d 827, 833 (7th Cir. 2002)). Fed. R. Civ. P. 6(a) instructs courts how to "comput[e] any time period specified in . . . any statute that does not specify a method of computing time." The rule provides the following relevant instructions where the period is stated in days or longer: "exclude the day of the event that triggers the period; . . . and [] include the last day of the period . . . ." Id. Pursuant to this method, "[w]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998).[11] In other words, the law confirms that a year is a year after all.[12] Because plaintiffs filed this action on June 2, 2020, which the law confirms is within "one year" of June 2, 2019, the court overrules the District Defendants' objection.

#### 4. Sovereign Immunity

In their motion to dismiss, the District Defendants argue that they are entitled to sovereign immunity under the Eleventh Amendment as an "arm of the state" and thus that the court lacks jurisdiction over the § 1983 claims against them. On that front, the R&R outlines the applicable law, notes that the parties failed to consider the relevant test, and

---

[11] This method of computing limitations periods, known as the "anniversary date method," represents the majority approach among states as well. See, e.g., Shalabi v. City of Fontana, 247 Cal. Rptr. 3d 268, 271 (Cal. App. 2019), reh'g denied (June 10, 2019) (California); Williams v. Crop Prod. Servs., Inc., 361 P.3d 1075, 1078 (Colo. App. 2015) (Colorado); State for Benefit of Quinn v. Johnson, 868 P.2d 555, 559 (Kan. App. 1994) (Kansas). The court has little doubt that South Carolina would follow suit.

[12] This analysis also debunks the District Defendants' theory that because 2020 was a leap year, the calculus of the limitations period should be different.

ultimately concludes that "the dismissal of [the District Defendants] based on Eleventh Amendment immunity is not appropriate at this time, and this issue would benefit from detailed briefing on the relevant factors, at the summary judgment stage." ECF No. 46 at 14. The District Defendants object, arguing that the issue must be considered at the instant juncture and that, when properly considered, the issue warrants their dismissal from the action. While the court agrees with the District Defendants' premise, it disagrees with their conclusion and therefore adopts the R&R's recommendation.

As an initial matter, the District Defendants are correct that courts must generally resolve a party's claim to sovereign immunity at the outset of a case. The Eleventh Amendment encapsulates the basic principles of sovereign immunity, a multi-faceted doctrine that pre-dates the Amendment's ratification in 1794: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Sovereign immunity protects the state, as well as its agencies, divisions, departments, officials, and other "arms of the State." Will v. Mich. Dept. of State Police, 491 U.S. 58, 70–71 (1989). Because "[t]he preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities," id., the doctrine "does not merely constitute a defense to monetary liability or even to all types of liability; [r]ather, it provides an immunity from suit." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 766 (2002). In other words, sovereign immunity stands unique as a defense because it shields a state or an arm thereof entirely from litigation, not merely from liability. Accordingly, sovereign immunity "deprives federal courts of jurisdiction to hear claims,

and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 649 (4th Cir. 2018). Thus, courts should generally resolve the issue of a party's sovereign immunity prior to approaching the merits of the case.

Where the issue of sovereign immunity is muddied by a defendant's failure to demonstrate its entitlement thereto, however, dismissal is inappropriate. Such is the case here. Unlike ordinary matters of subject matter jurisdiction, a defendant invoking the defense sovereign immunity bears the burden of demonstrating that the defense cloaks it with immunity. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014) ("Because a defendant otherwise protected by the Eleventh Amendment can waive its protection, it is, as a practical matter, structurally necessary to require the defendant to assert the immunity. We therefore conclude that sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating.").

In determining whether state affiliates are "arms of the State" for immunity purposes, "the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded." Ram Ditta By & Through Ram Ditta v. Maryland Nat. Capital Park & Planning Comm'n, 822 F.2d 456, 457 (4th Cir. 1987). "[I]f the State treasury will be called upon to pay a judgment against a governmental entity, then Eleventh Amendment immunity applies to that entity." Cash v. Granville Cty. Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001). Where the state treasury will not be liable for a judgment, the court must consider whether the "governmental entity is so connected to the State that the legal action against the entity would, despite the fact that the judgment will not be paid from the State treasury, amount to 'the

indignity of subjecting a State to the coercive process of judicial tribunals at the instance

of private parties.'" Id. at 224 (quoting Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 58

(1996)).

As the R&R correctly notes, "case law in this district is conflicting as to whether a

school district is an arm of the State of South Carolina." Terry v. Beaufort Cty. Sch.

Dist., 2018 WL 3737916, at *2 (D.S.C. July 16, 2018), report and recommendation

adopted, 2018 WL 3729803 (D.S.C. Aug. 6, 2018). In Terry, Magistrate Judge Baker

explained that courts have come to differing conclusions with respect to different school

districts in South Carolina:

> In Child Evangelism Fellowship of South Carolina v. Anderson School
> District 5, 438 F. Supp. 2d 609 (D.S.C. 2006), Judge Herlong noted that
> "[t]here are conflicting opinions . . . from the District of South Carolina" on
> the issue of "whether a school district 'is to be treated as an arm of the State
> partaking of the State's Eleventh Amendment immunity, or is instead to be
> treated as a municipal corporation or other political subdivision to which
> the Eleventh Amendment does not extend." [ ] 438 F. Supp. 2d at 618-19
> (quoting Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 280
> (1977)). Ultimately, after examining the record, Judge Herlong
> "conclude[d] that the Eleventh Amendment does not provide immunity" to
> the defendant, Anderson School District 5. Id. at 621. On the other hand,
> in Smith v. School District of Greenville County, 324 F. Supp. 2d 786, 796
> (D.S.C. 2004), then-District Judge Floyd stated, "[T]he Court is of the firm
> opinion that the relationship between the Defendant school districts and the
> state is so close and the laws of this state are such as to render the Defendant
> school districts as arms of the state for purposes of Eleventh Amendment
> sovereign immunity. That is, to allow these cases to go forward would
> offend the notion that the state is to be accorded the respect owed to it as a
> joint sovereign." See also Eldeco, Inc. v. Skansa USA Bldg., Inc., 447 F.
> Supp. 2d 521, 524, 527 (D.S.C. 2006) (Judge Duffy noted that the District
> of South Carolina "has had varying opinions on whether South Carolina
> school districts are arms of the State," but concluded that the Charleston
> County School District is "an arm of the State of South Carolina" and
> dismissed the complaint against it for lack of subject matter jurisdiction
> because it "is immune from private suit"); Grady v. Spartanburg Sch. Dist.
> Seven, Civ. A.[ ], 2014 WL 1159406 (D.S.C. Mar. 21, 2014) (Judge G. Ross
> Anderson concluded that the defendant Spartanburg School District Seven
> was not immune). Thus, there appears to be no consensus among the

District Judges in the United States Court for the District of South Carolina as to whether a school district in South Carolina is an arm of the State.

Id. Suffice it to say, the issue is far from clear-cut.

The District Defendants have not presented any evidence or substantive arguments demonstrating that the District is an arm of the state under the relevant law. Instead, the District Defendants, in their objections, do little more than regurgitate excerpts of Judge Duffy's opinion in Eldeco. See ECF No. 50 at 8–10 (quoting 447 F. Supp. 2d at 527). The District Defendants fail to apply Eldeco or any other law to the facts here and likewise present no evidence that might have a bearing on the relevant factors. As such, the court resolves to deny the motion to dismiss and permit the District Defendants to reassert their sovereign immunity argument at the summary judgment stage. The Fourth Circuit recently made explicit that the party asserting sovereign immunity bears the burden to prove it applies. Hutto, 773 F.3d at 543. In so doing, the court compared sovereign immunity to a traditional affirmative defense. Id. ("[S]overeign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating."). Because the District Defendants have not overcome that burden by a long shot, the court denies the motion to dismiss on that basis.

### E. Plaintiffs' Discrimination Claim

In addition to their § 1983 claims, plaintiffs assert a claim for violation of the Rehabilitation Act pursuant to 29 U.S.C. § 794, which they label "Discrimination Against a Person with Disability." Compl. ¶¶ 72–76. Defendants request dismissal of this claim under Fed. R. Civ. P. 12(b)(6). The R&R finds that plaintiffs' complaint "sufficiently allege[s] a claim for violation of the Rehabilitation Act in that [Tydrean] was subjected to an unreasonable seizure due to his disability." ECF No. 46 at 26. The District

21

Defendants now object, arguing that plaintiffs "merely plead the elements" of the claim but fail to "plead any facts actually supporting" it. ECF No. 50 at 11. Because plaintiffs fail to sufficiently plead a necessary element, the court rejects the finding of the R&R and dismisses plaintiffs' Rehabilitation Act claim.

Section 794 states that "[n]o otherwise qualified individual with a disability. . . shall, <u>solely by reason of her or his disability</u>, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by specified entities. 29 U.S.C. § 794(a) (emphasis added).[13] As the R&R lays out, a plaintiff seeking recovery for violation of the Rehabilitation Act must allege that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, <u>on the basis of her disability</u>." <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 498 (4th Cir. 2005) (emphasis added). The Fourth Circuit has explicitly noted that the Rehabilitation Act "require[s]" a plaintiff to allege that he was discriminated against "'solely by reason' of his disability." <u>Spencer v. Earley</u>, 278 F. App'x 254, 261 n.6 (4th Cir. 2008) (quoting 29 U.S.C. § 794(a)). In other words, a plaintiff must do more than plead an instance of discrimination and the existence of a qualifying disability; he must sufficiently allege that the latter was the sole motivation for the former. Therein lies the fatal flaw of plaintiffs' Rehabilitation Act claim.

---

[13] The court notes, as the R&R does, that violations of the Rehabilitation Act are indeed enforceable through private action, <u>Barnes v. Gorman</u>, 536 U.S. 181, 185 (2002), and that Congress has explicitly waived a state's claim to sovereign immunity with respect to violations of the statute, 42 U.S.C. § 2000d–7. Neither of these legal realties is disputed.

The complaint alleges that Tydrean is a "qualified individual with a disability," compl. ¶ 73, and specifically notes his "autism, ADHD, and impulsive disorder" as the basis for his disability, id. ¶ 15.  As such, plaintiffs sufficiently allege that Tydrean has a disability.  And the complaint alleges in detail Tydrean's "unreasonable detainment," which could fairly be described as an act of discrimination.  Id. ¶ 20.  But the problem with plaintiffs' Rehabilitation Act claim is that it fails to sufficiently plead causation between Tydrean's disability and the alleged act of discrimination.  To be sure, the complaint states that defendants "discriminated against Plaintiff due to his disabilities," id. ¶ 74, but this allegation is nothing more than a "recitation" of the causation element of the claim.  Twombly, 550 U.S. at 555.  In other words, the allegation is "rich in conclusions but devoid of supporting facts."  Willis v. Blevins, 966 F. Supp. 2d 646, 663 (E.D. Va. 2013).  Nowhere in the complaint's recitation of the Rehabilitation Act claim do plaintiffs allege the motivation behind defendants' alleged acts of discrimination.  Even read comprehensively and in a light most favorable to plaintiffs, the complaint entirely fails to allege any causal connection between Tydrean's disability and his detainment.  Clearly, no allegations in the complaint assert that Tydrean experienced the alleged acts of discrimination "solely by reason of his disability."  Spencer v. Earley, 278 F. App'x at 261 n.6 (quoting 29 U.S.C. § 794(a)).  Because plaintiffs' mere "recitation" of the causation element "will not do," the court rejects the R&R's recommendation and grants defendants' request to dismiss plaintiffs' Rehabilitation Act claim.  Twombly, 550 U.S. at 555.

### B. Plaintiffs' Objections

#### 1. Plaintiffs' § 1983 Claim Against DCSO and Pirkel in her Official Capacity

The R&R finds that plaintiffs' § 1983 claim against DCSO and Pirkel must fail because "[a]s a state agency, DCSO, and its employees[,] retain their immunity under the Eleventh Amendment and are not 'persons' for the purposes of § 1983." ECF No. 46 at 14–15. Now, in a cursory and unclear objection, plaintiffs argue:

> Plaintiffs' position on this issue remains the same, states that the Magistrate's interpretation of <u>Jinks v. Richland County</u> is flawed, and reiterates that the exception to the limitations on liability of a government agency should apply when their duty or responsibility is exercised in a grossly negligent manner (as in the present case). <u>See</u> <u>Jinks v. Richland County</u>, [ ] 585 S.E.2d 281 (S.C. 2003). The Plaintiffs would therefore request that this Court review the facts of this case in light of <u>Jinks</u> and deny Defendants' motions.

ECF No. 52 at 4. This objection makes little sense. The R&R finds that DCSO and Pirkel, in her official capacity, are immune from plaintiffs' § 1983 claims. Plaintiffs' argument invokes <u>Jinks</u>, a state court case about state claims asserted under the SCTCA, not claims brought under § 1983. 585 S.E.2d at 284. Of course, § 1983 creates an independent, private cause of action, and a plaintiff need not resort to the SCTCA to assert a claim under § 1983. Accordingly, plaintiffs do not need to demonstrate "gross negligence" to state a claim under § 1983, as they might be required to do under the SCTCA in certain circumstances. Moreover, the R&R's finding is rooted in DCSO and Pirkel's retention of sovereign immunity. <u>Jinks</u>, a South Carolina Supreme Court case, has nothing to say about sovereign immunity in the context of federal claims. As such, the court overrules the objection and adopts the finding of the R&R.

### 2. **Monell** Liability

Next, plaintiffs object to the R&R's finding that plaintiffs fail to sufficiently state a claim for municipal liability under § 1983 against the District and Dorchester County. "Municipalities are not liable under respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Rather, "municipal liability results only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Spell, 824 F.2d at 1385 (citing Monell, 436 U.S. at 694). Generally, a municipality's official policy is found in its ordinances, regulations, and other official codes committed to writing; however, "[municipal policy] may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy." Id. at 1385–86 (citing Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)).

Where a plaintiff seeks to attach municipal liability to the act of a single municipal official, "liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481. In the Fourth Circuit, "not every decision by every municipal official will subject a municipality to § 1983 liability." Riddick v. Sch. Bd. Of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). "Policy in this context implies most obviously and narrowly a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational

details of government." Spell, 824 F.2d at 1386 (citing City of Oklahoma City v. Tuttle,

471 U.S. 808, 823 (1985)) (internal quotation marks omitted).

Here, plaintiffs seem to indicate two bases for their claim of municipal liability.

First, plaintiffs point to the following allegation of their complaint: "Defendants

implemented procedures and protocols allowing officers to be present in the schools, and

regarding questioning students if there was a danger of harm to others." Compl. ¶ 17.

The problem with this allegation is that it alleges no constitutional violation. Even

assuming the truth of the allegation, a municipal policy that allows officers to be present

in school and question students does not, without more, implicate constitutional concerns.

Therefore, that allegation is insufficient to state a claim for municipal liability under

Monell.

Plaintiffs also seem to indicate that the actions of the individual officers might

provide a basis for their claim for municipal liability under § 1983. The R&R effectively

explains why those allegations also fail under Monell:

> In their briefing, Plaintiffs state that "[t]he Complaint contains allegations
> that [Tydrean's] deprivation and harm was perpetuated through deviation
> from an official policy." [ . . . ] According to the Complaint, "Defendants
> Principal and Resource Officer . . . failed to carry out the adopted policies
> and procedures of the police department and the school district" and "[s]uch
> policies and procedures were protocols and were designed to perfect
> protection for individual rights." The Complaint does not mention any other
> similar incidents that would support finding "a widespread practice that is
> so engrained it constitutes a custom." Carter, 164 F.3d at 218; see also
> Milligan, 743 F.2d at 230 (a policy or custom that gives rise to § 1983
> liability will not "be inferred merely from municipal inaction in the face of
> isolated constitutional deprivations by municipal employees").

ECF No. 46 at 17–18 (some citations omitted) (emphasis in original). The court agrees.

To the extent plaintiffs rely on the actions of the individual officers to establish Monell

liability, that claim fails because the allegations clearly indicate "episodic exercises of

26

discretion" in violation of municipal policy, rather than policy decisions made by final

decisionmakers.  Spell, 824 F.2d at 1386.  Accordingly, the court overrules plaintiffs'

objection and adopts the finding of the R&R.

### 3.  Claims Against Brinkley in His Official Capacity

The R&R states:

> The Complaint alleges § 1983 claims against Brinkley in his official
> capacity for "Deprivation of Constitutional Rights" and "False Arrest and
> Confinement."  As noted above, Plaintiff has also brought these same claims
> against [the District], the entity of which Brinkley is an agent.  Claims
> against government employees in their "official-capacity" "generally
> represent only another way of pleading an action against an entity of which
> an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)
> (["A]s long as the government entity receives notice and an opportunity to
> respond, an official-capacity suit is, in all respects other than name, to be
> treated as a suit against the entity[.]").

ECF No. 46 at 21 (some citations removed).  Plaintiffs object, explaining that "they are

entitled to plead overlapping, or even inconsistent theories of liability in their Complaint,

but are not required to make an election of remedies until after a jury returns a verdict."

ECF No. 52 at 6.  Plaintiffs again misunderstand the law.

In Graham, the Supreme Court explained that, "[p]ersonal-capacity suits seek to

impose personal liability upon a government official for actions he takes under color of

state law," 473 U.S. at 165 (citing Scheuer v. Rhodes, 416 U.S. 232, 237–238 (1974)),

while "[o]fficial-capacity suits, in contrast, 'generally represent only another way of

pleading an action against an entity of which an officer is an agent,'" id. (quoting Monell

v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978)).  Because of

the way in which § 1983 jurisprudence has evolved, "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity," meaning that "[t]here

is no longer a need to bring official-capacity actions against local government officials"

under § 1983.  Id. at 167 n.14.  As such, plaintiffs' § 1983 claim against Brinkley in his official capacity and their claim against the District are not "alterative" legal theories; they are the same claim.  While a plaintiff is entitled to plead alternative and even conflicting causes of action, there is no equivalent entitlement to duplicative claims. Thus, the R&R's recommendation of dismissal is correct.  Plaintiffs' objection to the contrary is overruled.

### 4.  Plaintiffs' State Law Claims against DCSO and Pirkel, in her Official Capacity.

In addition to their federal claims, plaintiffs assert state law claims under the South Carolina Tort Claims Act ("SCTCA") for: (1) negligence and gross negligence, (2) invasion of privacy, (3) "grossly negligent and intentional infliction of emotional distress/outrage;" and (4) civil conspiracy.  Compl. at 10–15.  The R&R finds that the DCSO and Pirkel, in her official capacity, are entitled to immunity under the Eleventh Amendment and thus "cannot be subject to these state law claims."  ECF No. 46 at 26. Plaintiffs object, arguing that they have sufficiently pled the elements for gross negligence, as required under the SCTCA.  Yet again, plaintiffs misunderstand the law. The R&R did not hold that plaintiffs' claim was insufficiently pled; rather, it held the that DCSO and Pirkel's entitlement to sovereign immunity shields them from plaintiffs' state law claims.  The court agrees.

As discussed above, the doctrine of sovereign immunity generally shields state actors from suit.  Sovereign immunity is not absolute, however, and a state may waive its claim to immunity through statute.  South Carolina has done so through the SCTCA, which constitutes a "waiver of sovereign immunity," pursuant to which "the State, its agencies, political subdivisions, and other governmental entities are 'liable for their torts

in the same manner and to the same extent as a private individual under like

circumstances[.]"  Jinks, 585 S.E.2d at 283 (quoting S.C. Code Ann. § 15-78-40).

However, the SCTCA explicitly retains immunity with respect to claims filed in federal

court.  S.C. Code Ann. § 15–78–20(e).  In other words, the SCTCA constitute a waiver of

the state's sovereign immunity with respect to claims made in state court but not with

respect to claims had in federal court.  See Doe v. Coastal Carolina Univ., 359 F. Supp.

3d 367, 379 (D.S.C. 2019) ("South Carolina has not waived its Eleventh Amendment

immunity for lawsuits in federal court, consenting to suit only in South Carolina state

court to the extent that it has waived tort claims against it.").

 The R&R is correct in its conclusion that plaintiffs' state law claims against

DCSO and Pirkel, in her official capacity, must fail.  DCSO retains its sovereign

immunity from claims made in federal court because the SCTCA does not waive the

state's immunity from claims in federal court.  S.C. Code Ann. § 15–78–20(e); see also

Odom v. Wilson, 2007 WL 1231797, at *6 (D.S.C. Apr. 25, 2007), aff'd, 250 F. App'x

573 (4th Cir. 2007) ("Suits brought under the South Carolina Tort Claims Act must be

brought in a state court within the boundaries of South Carolina.").  To the extent

plaintiffs bring suit against Pirkel in her official capacity, those claims are nothing more

than identical claims against the DCSO.  See S.C. Code Ann. § 15-78-70(c) ("In the event

that the employee is individually named, the agency or political subdivision for which the

employee was acting must be substituted as the party defendant.").  Accordingly, both

DCSO and Pirkel, in her official capacity, are entitled to sovereign immunity for state

claims brought in federal court.[14]  Thus, the court overrules plaintiffs' objection and adopts the R&R's finding that DCSO and Pirkel, in her official capacity, are immune from plaintiffs' state law claims.

### 5. Negligence and Gross Negligence against Brinkley

The SCTCA is clear that an individual employee of a state agency can only be held liable for an act committed "outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  S.C. Code Ann. § 15-78-60.  Here, the R&R finds that plaintiffs' claim for negligence and gross negligence against Brinkley must be dismissed because "there are no allegations in the Complaint that support [a] finding [that] Brinkley's conduct was sufficient to fall outside of the official capacity restrictions of the SCTCA."  ECF No. 46 at 29.  Plaintiffs object, stating in full: "The Plaintiffs object to the Magistrate's recommendation that Plaintiffs' negligence and gross negligence claims against Defendants Brinkley and DCSO should be dismissed.  The reasoning, again, is based on the Magistrate's faulty conclusion that the elements of a gross negligent claim have not been sufficiently plead [sic]."  ECF No. 52 at 7.[15]  Because plaintiffs' objection is

---

[14] This analysis is again unaffected by Jinks.  585 S.E.2d at 281.  There, the Supreme Court of South Carolina affirmed a trial court's entry of a directed verdict against a plaintiff who asserted a claim of gross negligence against Richland County. Jinks has little to say about sovereign immunity.  And even if it did, Jinks would not be persuasive.  As discussed above, the SCTCA waives the states sovereign immunity with respect to claims made in state court but retains immunity with respect to claims made in federal court.  S.C. Code Ann. § 15–78–20(e).  Jinks involved claims in state court; this case involves claims in federal court.

[15] As the court explained above, DCSO is immune from plaintiffs' state law claims because the SCTCA does not waive the state's immunity with respect to claims made in federal court.  Thus, plaintiffs' objection does not apply to DSCO and their inclusion of DCSO in their argument evinces yet another misunderstanding of the applicable law.

general, conclusory, and fails to explain with any specificity how the R&R errs, the court

reviews the recommendation for clear error. Finding none, the court rejects the objection

and adopts the recommendation.

### 6. Invasion of Privacy Against All Defendants

Plaintiffs have brought a claim for "invasion of privacy." Compl. As the R&R

correctly noted, in South Carolina "invasion of privacy" is not itself a cause of action but

a label that describes three separate causes of action: (1) wrongful appropriation of

personality, (2) wrongful publicizing of private affairs, and (3) wrongful intrusion into

private affairs. ECF No. 46 at 31. Accordingly, the R&R forgivingly construes

plaintiffs' invasion of privacy claim as a claim for "wrongful intrusion into private

affairs." ECF No. 46 at 31. The R&R recommends dismissal of the claim, finding,

"[A]n alleged wrongful seizure and arrest without probable cause on the facts alleged is

not sufficient to state a claim of invasion of privacy based on wrongful intrusion into

one's private affairs." Id. Plaintiffs object, arguing that the complaint actually "alleges a

wrongful publicizing of private affairs, instead of wrongful intrusion of private affairs, as

the Magistrate assumes." ECF No. 52 at 7.

To summarize, plaintiffs again failed to allege a proper claim under South

Carolina law. Kindly, the Magistrate Judge construed that claim on plaintiffs' behalf,

according to the complaint's allegations. Now, plaintiffs claim that the Magistrate Judge

erred in so construing. No good deed goes unpunished. The court finds that the

Magistrate Judge's interpretation of the complaint was a fair, and even forgiving, reading.

Plaintiffs' "invasion of privacy" claim includes the following allegation: "The

Defendants wrongfully, intentionally, substantially and unreasonably intruded into the

31

private affairs of the Plaintiffs."  Compl. ¶ 60.  Clearly, plaintiffs' claim is one for

"wrongful intrusion of private affairs" as the complaint explicitly alleges that  defendants

"wrongfully . . . intruded into the private affairs of Plaintiffs."  Id.  Any argument to the

contrary is disingenuous.  Therefore, the court overrules plaintiffs' objection.

### 7.  Grossly Negligent and Intentional Infliction of Emotional Distress/Outrage Against All Defendants

The R&R recommends that the court dismiss plaintiffs' claim for grossly

negligent and intentional infliction of emotional distress/outrage.  First, the R&R finds

that South Carolina recognizes the tort of negligent infliction of emotional distress claim

only "where the plaintiff's distress arises from some physical injury or the plaintiff

qualifies as a 'bystander' to an accident involving physical trauma."  ECF No. 46 at 32

(citing Smith v. City of Charleston, 2007 WL 9735801, at *2 (D.S.C. July 24, 2007).

Because plaintiffs failed to plead any facts alleging as much, the R&R finds that

plaintiffs' claim for negligent infliction of emotional distress must fail.  Plaintiffs

concede on this front.  See ECF No. 52 at 8.  Next, the R&R finds that plaintiffs' claim

for intentional infliction of emotional distress must also fail because "[r]ecovery from

governmental entities for intentional torts and intentional infliction of emotional distress

is specifically barred by the Tort Claims Act."  Smith, 2007 WL 9735801, at *5 (citing

S.C. Code Ann. §§ 15-78-30, 15-78-60(17)).  To this recommendation, plaintiffs object,

arguing that the tort of intentional infliction of emotional distress can be proven through a

showing of recklessness, meaning that it should not be precluded by the SCTCA's bar on

intentional torts.  The court disagrees.

The SCTCA explicitly defines a recoverable loss under the statute as any loss

"recoverable in actions for negligence," and explicitly excludes losses from "the

intentional infliction of emotional harm." S.C. Code Ann § 15-78-30(f). Under plaintiffs' theory, their alleged injury from defendants' infliction of emotional harm should fall under the former category, and not the latter, because it can be proven by showing that the defendants acted recklessly, not intentionally. It is clear to the court that plaintiffs' alleged injury still falls within the SCTCA's bar to recovery for losses from "the intentional infliction of emotional harm," even though plaintiffs think their claim can be proven through recklessness. For one, South Carolina courts have long treated recklessness conduct as possessing an element of willfulness. See, e.g., Berberick v. Jack, 709 S.E.2d 607, 612 (S.C. 2011) ("Recklessness implies the doing of a negligent act knowingly; it is the conscious failure to exercise due care."); Boyd v. Blue Ridge R. Co., 43 S.E.2d 817, 818 (S.C. 1903) ("If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning – the conscious failure to exercise due care."). In other words, "reckless" in South Carolina is far closer to "intentional" than "negligent."

More fundamentally, the court finds it hard to believe that the South Carolina legislature would explicitly exclude from recovery any loss caused by "the intentional infliction of emotional harm," but not exclude from recovery the very same harm when the emotional distress was inflicted recklessly. S.C. Code Ann § 15-78-30(f). A much more rational reading of the statute is that the South Carolina legislature intended to exclude losses resulting from the tort of intentional infliction of emotional distress, whether the harm is proven through the defendant's intentional acts or his recklessness. This court has previously concluded the same. Smith v. City of Charleston, 2007 WL

33

9735801, at *5 (D.S.C. July 24, 2007) ("Recovery from governmental entities for intentional torts and intentional infliction of emotional distress is specifically barred by the Tort Claims Act.").  As such, the court overrules plaintiffs' objection and dismisses plaintiffs' claim for grossly negligent and intentional infliction of emotional distress/outrage.[16]

---

[16] Neither the R&R nor the parties address plaintiffs' claim for intentional infliction of emotional distress to the extent that it is asserted against Pirkel and Brinkley in their individual capacities, which would fall outside of the SCTCA's scope.  Although plaintiffs fail to oppose dismissal on this front, the court nevertheless shoulders "an obligation to review motions [to dismiss] to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014).  Reviewing the complaint, the court finds that dismissal is proper here.

In South Carolina, a claim for intentional infliction of emotional distress must sufficiently allege that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 70 (S.C. 2007) (quoting Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).  Further, where, as here, a plaintiff does not allege physical harm, "the courts should look initially for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious."  Id.

After reviewing the complaint, the court finds that plaintiffs' allegations denote neither sufficiently "extreme and outrageous" conduct nor sufficiently "severe" emotional distress to state a proper claim.  Plaintiffs allege that Pirkel sent Tydrean to a room alone with Brinkley and that Brinkley forced Tydrean to sign a false statement. Even if true, that conduct falls short of being "utterly intolerable in a civilized community."  Id.  Likewise, plaintiffs merely allege that they experienced emotional distress "so severe that no reasonable person could be expected to endure it."  Compl. ¶ 70.  Once again, plaintiffs have conclusory mirrored the legal standard without providing any substantive detail to support their claim.  As the court has already stated, such conclusory allegations "will not do."  Twombly, 550 U.S. at 555.  As such, the court adopts the R&R's recommendation and dismisses plaintiffs' claim for intentional infliction of emotional distress in full.

### 8. Civil Conspiracy Against All Defendants

The R&R recommends dismissal of plaintiffs' civil conspiracy claim. To sufficiently state a civil conspiracy claim, a plaintiff must plead "special damages," <u>Lee v. Chesterfield Gen. Hosp., Inc.</u>, 344 S.E.2d 379, 382 (S.C. 1986), which must "exceed the damages alleged for the plaintiff's other claims." <u>State Farm Life Ins. Co. v. Murphy</u>, 260 F. Supp. 3d 497, 503 (D.S.C. 2017). The R&R finds that plaintiffs "failed to allege any special damages which arose specifically because of the conspiracy itself, and that were not caused by the other claims at issue." ECF No 46 at 33. Plaintiffs object, arguing that their prayer for "other and further relief as the Court may deem just and proper" constitutes a sufficient allegation of special damages. Not so. Fed. R. Civ. P. 9(b) specifically requires, "If an item of special damage is claimed, it must be specifically stated." As such, plaintiffs' general allegations of special damages are insufficient, and the R&R is correct in recommending dismissal. The court overrules the objection and dismisses the claim.

### 9. Request to Amend

In their papers responsive to the motions to dismiss, plaintiffs ask that the court grant leave to amend the complaint to fix any deficiencies the court may find. The R&R rejects the request, finding, "Plaintiffs have not offered any explanation of how they would remedy the deficiencies in their Complaint, nor have they provided a proposed amended complaint. Accordingly, the undersigned recommends Plaintiffs' request to amend be denied as futile." ECF No. 46 at 34. Plaintiffs object to this recommendation but still fail to explain how they might remedy the errors the R&R points out. Of course, the court must be aware of the amendments a party proposes before determining whether

it should permit an amendment.  Because plaintiffs have still not given any indication of the amendment they propose, the court declines to grant plaintiffs carte blanche permission to amend.  See Cobb v. South Carolina, 2014 WL 4220423, at *7 (D.S.C. Aug. 25, 2014) ("At this stage in the litigation, Plaintiffs have been on ample notice for some time of the deficiencies of their complaint, and have proposed no amendment that would solve them.  Therefore, the Court agrees that granting leave to amend at this time would be futile.").

However, as the court noted at the hearing and as this order makes abundantly evident, plaintiffs' kitchen-sink complaint is, to say the least, far from a model of clarity, and the chaos with which it states plaintiffs' claims has hindered the progress of this action and distracted from its merits.  As such, the court denies plaintiffs' motion to amend to the extent that it seeks to assert new claims, include novel allegations, or reallege any of the claims dismissed by this order.  Plaintiffs have no right to "do over" after "do over" after "do over."  However, the court orders plaintiffs to file a new complaint that accurately reflects the proper plaintiff, includes only the claims that the court has found tenable and defendants that the court has not dismissed, and indicates with clarity against which remaining defendant each remining claim is asserted.  In other words, the court orders plaintiffs to file a clear and organized complaint that reflects the current posture of this action and incorporates the holdings of this order.  Defendants are not required to respond to this new complaint but are permitted to do so if they so choose.

In sum, the court adopts the R&R in full with one exception.  Declining to adopt the recommendation of the R&R, the court dismisses plaintiffs' claim for "Discrimination Against a Person with Disability."  After the court's resolution of the instant motions to

dismiss, plaintiffs' remaining claims are as follows: (1) a § 1983 claim for deliberate indifference/failure to train against the District and Dorchester County; (2) a § 1983 claim for an unlawful seizure against Pirkel in her individual capacity; and (3) negligence/gross negligence against the District and Dorchester County.  Defendants Brinkely, DCSO, and Dubose Middle School are dismissed from the case.[17]

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART AND REJECTS IN PART** the R&R; **GRANTS** Brinkley's motion to dismiss, ECF No. 12; **GRANTS** Dubose Middle School's motion to dismiss, ECF No. 10; **GRANTS IN PART AND DENIES IN PART** the District's motion to dismiss, ECF No. 11; **GRANTS IN PART AND DENIES IN PART** Dorchester County, DCSO, and Pirkel's motion to dismiss, ECF No. 16; and **DENIES** the District's second motion to dismiss, ECF No. 60.  Further the court **ORDERS** plaintiffs to file a new complaint in accordance with this order's instruction by May 1, 2021.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 30, 2021**
**Charleston, South Carolina**

---

[17] The District's second motion to dismiss, ECF No. 60, merely reasserts arguments already presented to the court in its first motion to dismiss.  As such, the court denies it and directs the District to the court's resolution of its first motion to dismiss.

37